## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

TODD A. RASSEL,                      )
                                     )
                    Plaintiff,       )
v.                                   )         CIVIL ACTION
                                     )
                                     )         No. 07-3290-KHV
ROGER WERHOLTZ, et al.,              )
                                     )
                    Defendants.      )
_____)

### MEMORANDUM AND ORDER

Todd Rassel, a former inmate at the Lansing Correctional Facility ("LCF"), brings suit pro se under 42 U.S.C. § 1983 against numerous defendants for violation of constitutional rights under the First, Eighth and Fourteenth Amendments. Plaintiff also asserts state law claims. This matter is before the Court on Defendant Correct Care Solutions' Motion For Summary Judgment (Doc. #31) filed July 1, 2008. For reasons set forth below, the Court finds that the motion should be overruled.

### Legal Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942

F.2d 737, 743 (10th Cir. 1991).  Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which [he] carries the burden of proof."  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).  The nonmoving party may not rest on his pleadings but must set forth specific facts.  Applied Genetics, 912 F.2d at 1241.

The Court must view the record in a light most favorable to the party opposing the motion for summary judgment.  Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991).  Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative.  Anderson, 477 U.S. at 250-51.  "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial."  Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P. 56(e).  Rule 56(e) also requires that "copies of all papers or parts thereof referred to in an affidavit be attached thereto or served therewith."  To enforce this rule, the Court ordinarily does not strike affidavits but simply disregards those portions which are not based upon personal knowledge or otherwise do not comply with Rule 56(e).  Maverick Paper Co. v. Omaha Paper Co., Inc., 18 F.Supp.2d 1232, 1234-35 (D. Kan. 1998).

In pro se prisoner litigation, the Tenth Circuit endorses the completion and filing of a "Martinez report" where the prison constructs an administrative record which details the factual investigation of the events at issue. See Martinez v. Aaron, 570 F.2d 317, 319 (10th Cir. 1978). The Court treats a Martinez report like an affidavit, and does not accept the factual findings of the prison investigation when plaintiff has presented conflicting evidence. Green v. Branson, 108 F.3d 1296, 1302 (10th Cir. 1997). The Court also treats the pro se prisoner's complaint, when sworn and made under penalty of perjury, as an affidavit. See id.

In support of its motion for summary judgment, defendant sets out four numbered fact paragraphs. Plaintiff's opposition brief does not set forth the specific paragraphs in defendant's memorandum that he disputes and does not consistently specifically contradict defendant's factual assertions with reference to those portions of the record on which he relies. Further, plaintiff's brief sets forth additional facts and argument in the same numbered paragraphs in which he disputes defendant's facts. See D. Kan. Rule 56.1.[1]

_____

[1]       (a) Supporting Memorandum.

The memorandum or brief in support of a motion for summary judgment shall begin with a section that contains a concise statement of material facts as to which the movant contends no genuine issue exists. The facts shall be numbered and shall refer with particularity to those portions of the record upon which movant relies. All material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party.

(b) Opposing Memorandum.

(1) A memorandum in opposition to a motion for summary judgment shall begin with a section that contains a concise statement of material facts as to which the party contends a genuine issue exists.

(continued...)

The Court recognizes that pro se litigants should not succumb to summary judgment merely because they fail to comply with the technical requirements involved in defending such a motion. See Woods v. Roberts, No. 94-3159, 1995 WL 65457, at *2 (10th Cir. Feb. 17, 1995); Hass v. U.S. Air Force, 848 F.Supp. 926, 929 (D. Kan. 1994). The Court has therefore searched the record to determine whether genuine issues of material fact preclude the entry of summary judgment.

### Factual Background

The following material facts are uncontroverted or, where controverted, set forth in a light most favorable to plaintiff:

From September of 2004 through the summer of 2008, plaintiff was incarcerated at LCF. From May of 2005 to August of 2006, plaintiff worked in the LCF screen printing plant operated by Impact Design LLC. Soon after he began work there, he began to suffer headaches. In July of 2005, J.F. Denny Heating and Cooling Company was performing routine maintenance at LCF. Plaintiff asked a Denny employee to check the carbon monoxide levels at the printing plant. The employee measured the carbon monoxide level and told plaintiff that it was "dangerously high" at 45 parts per million (ppm). On August 22, 2005, Denny faxed plaintiff a chart which set out EPA

---

[1](...continued)

> Each fact in dispute shall be numbered by paragraph, shall refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, shall state the number of movant's fact that is disputed. (2) If the party opposing summary judgment relies on any facts not contained in movant's memorandum, that party shall set forth each additional fact in a separately numbered paragraph, supported by references to the record, in the manner required by subsection (a), above. All material facts set forth in this statement of the non-moving party shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the reply of the moving party.

standards for carbon monoxide exposure.  A handwritten notation on the chart stated: "Meter Reading: 18 ppm in general or 45 ppm close to oven."  Denny Fax, attached as Exhibit to Declaration in Opposition to Defendant's Motion For Summary Judgment (Doc. #37) filed July 15, 2008 at 9.  The fax also stated: "I will call once I get some schedule information as far as bringing the engineer in to look at solving some of the air flow issues."  The fax indicates that Denny sent a copy of the fax to Impact Design.

On August 23, 2006, plaintiff sought medical treatment at the LCF clinic.  Correct Care Solutions ("CCS") operates the LCF clinic.  Plaintiff complained of severe headaches, dizziness, blurred vision and an inability to eat properly.  Over the next six months, CCS staff prescribed plaintiff four different medications for headaches.  Plaintiff continued to complain of headaches. Although CCS staff performed a routine blood test which showed that plaintiff's hemoglobin count was normal, CCS staff did not test plaintiff for possible long-term effects of carbon monoxide poisoning.

In October of 2006, plaintiff filed a grievance with Bill Shipman, his Unit Team Leader.  The grievance stated that over that past five years, plaintiff and other inmates had been subjected to high levels of carbon monoxide in the screen print plant.  It also stated that plaintiff had told Lt. Blankenship, LCF safety inspector, that he was concerned about carbon monoxide at the plant. The grievance indicated that Denny had measured high carbon monoxide levels and recommended a solution, but that neither Impact Design nor the Kansas Department of Corrections had addressed the problem.  Plaintiff then complained of inadequate medical treatment, as follows:

I am having several medical complications caused from working in this toxic environment.  CCS is only treating part of my medical problems.  I would like to be treated by an outside doctor who has worked with people that has been subjected to carbon monoxide poisoning.  I would also like to be compensated for the medical

problems it has caused and for future complications.  I would like to see KDOC and Impact Design LLC repair the problem so that inmates in the future will not be subjected to the carbon monoxide poisoning.

Grievance, attached as Exhibit to Martinez Report (Doc. #30-3) at 3, 5.

In response to the grievance, Shipman contacted Lt. Blankenship, who sent him a memorandum which stated that she was not familiar with a carbon monoxide issue.  She reported that during August of 2002 she tested several areas at LCF (including the Impact Design facility) for solvent vapors because she had smelled chemical odors in several areas.  She did not test for carbon monoxide, however, because it is odorless and "without an inquiry or complaint from inmates, staff or medical staff I would not have reason to suspect there was a problem."  See Blankenship Memo, attached as Exhibit to Martinez Report (Doc. #30-3) at 8.  Blakenship also stated that when she tested for solvent vapors, an inmate mentioned in passing that he had been having headaches.

In response to the grievance, Shipman also contacted Kim Palmer, Health Service Administrator.  Palmer sent Shipman a memorandum which stated as follows:

> I have consulted with our Regional Medical Director regarding [plaintiff].  There are no long term effects of limited exposure to carbon monoxide.  Once a person leaves the area where the carbon monoxide is located, it clears there [sic] system.  Prolonged, continuous exposure to large levels of carbon monoxide where a person gets no fresh air can lead to death.  [Plaintiff] has been treated for his headaches.  The HCP ordered medication that [plaintiff] did not pick up.  Lab work has also been performed and other than high cholesterol, all [of plaintiff's] labs are within normal limits.  The issues regarding Impact [D]esign should be addressed by Impact [D]esign.

Palmer Memo, attached as Exhibit to Martinez Report (Doc. #30-3) at 6.

On October 31, 2006, Shipman informed plaintiff that he had concluded that the grievance was invalid because (1) tests did not reflect a high level of carbon monoxide, (2) plaintiff did not

pick up his medication and (3) lab work was within normal limits.

Plaintiff asked Shipman to forward his grievance to the Warden's Office.  Plaintiff argued that contrary to Palmer's response, he was not complaining of "limited exposure" to carbon monoxide.  See Plaintiff's Written Statement, attached as Exhibit to Martinez Report (Doc. #30-3) at 12.  Plaintiff stated:"[i]nmates are ingesting 5 times in one day what they are to receive in one full year" and that it "causes lung problems, sight, hearing, nervous system and kills brain cells. . . . I would like to be taken to an outside doctor and see how much damage the poisoning has done to me."  Id.  Plaintiff also stated that he had received all of the medication which CCS gave him.[2]

On November 3, 2006, Warden David R. McKune concluded that "the response provided by the Unit Team Manager, with input from Correct Care Solutions (CCS) is appropriate and correct regarding these issues."

Plaintiff then appealed the grievance to William L. Cummings, Secretary of Corrections. On November 21, 2006, Cummings responded to the appeal as follows:

> Mr. Rassell claims that inmates are being required to work in an environment where there are excessive levels of carbon monoxide.
>
> On November 20, 2006, an independent representative from the Delaware Township Fire Department conducted an air quality of the area that is the subject of this grievance.  There was no evidence of an excessive level of carbon monoxide as is alleged by Rassell.

Cummings Letter, attached as Exhibit to Martinez Report (Doc. #30-3), at 10.

On November 29, 2007, plaintiff filed suit asserting federal and state law claims against numerous defendants.  As to CCS, plaintiff asserts two theories of relief: (1) violation of his Eighth

---

[2]     Part of plaintiff's response to Shipman's denial of the grievance is unreadable.  See Doc. 30-3 at 12.

Amendment right to be free from cruel and unusual punishment based on deliberate indifference to his serious medical needs and (2) a state law claim for negligence.

On June 19, 2008, LCF filed a Martinez report which includes a brief summary of plaintiff's medical treatment, as follows:

> Todd Rassel is a patient at LCF who complained of being exposed to carbon monoxide 8-8-2006 and carbon monoxide poisoning in September of 2006. At the time he had according to records been released from his work in the screen printing and machine embroidery facility on site where he worked from 7-19-05 to 8-03-06. I could not find any enclosed source of carbon monoxide at the work environment or any other patients which had presented with similar complaints. An exposure to carbon monoxide would have had to have been due to an enclosed area with a combustion engine. Effects if an exposure occurred anywhere would resolve spontaneously once away from the source over a very short period anyway. A person can be exposed to carbon monoxide as described above but not to carbon monoxide poisoning. He has had an ongoing complaint of head ache but this is not related. He did not work again until October of 2006. There is no medical justification from my review pertaining to the alleged carbon monoxide poisoning.

See Summary of IM Complaint August 2006 to October 2006, submitted April 7, 2008 by C. David Lawhorn M.D., Regional Director of CCS, attached as Exhibit to Martinez Report (Doc. #30-2) at 2. Notably, the Martinez report does not include plaintiff's medical records from LCF.

## Analysis

## I.      Cruel And Unusual Punishment: Denial Of Medical Care (Count I)

Plaintiff alleges that CCS subjected him to cruel and unusual punishment in violation of the Eighth Amendment by denying him testing and treatment for serious medical symptoms which he attributes to carbon monoxide poisoning. To establish an Eighth Amendment violation, plaintiff must demonstrate that defendant acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). CCS asserts that it is entitled to summary judgment because plaintiff does not allege that any CCS policy or custom caused a constitutional violation.

In Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978), the Supreme Court held that a municipality cannot be held liable under 42 U.S.C. § 1983 merely on account of the unauthorized acts of its agents. Id. at 691-94 (rejecting Section 1983 claim based on respondeat superior theory). Courts have extended the Monell holding to Section 1983 claims against private defendants. See Dubbs v. Head Start, Inc., 336 F.3d 1194, 1216 (10th Cir. 2003) (citations omitted) (citing Monell, 436 U.S. at 69); see also Dickerson v. Leavitt Rentals, 995 F. Supp. 1242, 1247 (D. Kan. 1998), aff'd, 153 F.3d 726 (10th Cir. 1998).  Therefore, to succeed on his Section 1983 claim against CCS, plaintiff must allege and prove that CCS caused a constitutional violation through an official policy or custom which was the direct cause or moving force behind the constitutional violation.  See Pembaur v. City of Cincinnati, 475 U.S. 469, 480-85 (1986).

As noted, CCS asserts that plaintiff has not alleged or produced evidence of any CCS policy or custom which caused an Eighth Amendment violation.  Plaintiff responds as follows:

> [CCS] claim[s] that they are not responsible based upon the action of their employees.  This is only true if they were not notified about the problem.  CCS was made aware of the issue concerning the carbon monoxide poisoning through the grievances. . . .  To this date CCS has not ordered testing to be done to the plaintiff for carbon monoxide poisoning nor ha[ve] any doctors for CCS performed any testing.

Plaintiff's Declaration In Opposition To Defendant's Motion For Summary Judgment (Doc. #37) filed July 15, 2008. at 1.[3]  CCS replies that plaintiff has still not identified any policy or custom that caused a constitutional violation.  CCS notes that it did not operate the printing plant and asserts that it had no authority to test the printing plant for carbon monoxide.  Further, CCS argues that even if it had tested for carbon monoxide at the plant, the results would mirror the tests conducted by the

---

[3]      As noted, the Martinez report does not contain a complete set of plaintiff's medical records while at LCF.  Rather, it includes only a brief overview of plaintiff's medical care at LCF.

fire department (and later by the Kansas Department of Labor).

Defendant's argument does not address plaintiff's claim that CCS did not treat him for symptoms – including dizziness and vision problems – which he attributes to carbon monoxide poisoning.[4]  Viewed in a light most favorable to plaintiff, the record supports a finding that CCS employees and decision makers knew of plaintiff's complaints (which plaintiff believed were related to carbon monoxide) but did not direct further treatment to address his symptoms.  In other words, plaintiff has presented evidence that CCS was aware of and authorized the actions of CCS staff in declining to treat his complaints of dizziness and vision problems.  Plaintiff has thus demonstrated a genuine issue of material fact whether CCS engaged in a custom or practice which resulted in deliberate indifference to a serious medical need.  Therefore CCS is not entitled to summary judgment on plaintiff's Eight Amendment claim.

---

[4]      "Deliberate indifference" includes both an objective and a subjective component. Sealock v. Colo., 218 F.3d 1205, 1209 (10th Cir. 2000).  The objective component requires that the deprivation is "sufficiently serious."  Id. (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)).  The subjective component requires that a prison official "knows of and disregards an excessive risk to inmate health or safety."  Id.

A medical need is serious if a physician has diagnosed it as requiring treatment or if it is so obvious that even a lay person would easily recognize the need for a doctor's attention.  See Sealock, 218 F.3d at 1209; Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980).  Indications that a prisoner has a "serious" need for medical treatment include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; and the existence of chronic and substantial pain.  Riddle v. Mondragon, 83 F.3d 1197, 1202 (10th Cir. 1996) (citing McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).  A delay in medical care is an Eighth Amendment violation when plaintiff can show that it resulted in substantial harm, Oxendine v. Kaplan, 241 F.3d 1272, 1276 (10th Cir. 2001), such as lifelong handicap, permanent loss or considerable pain.  Garrett v. Stratman, 254 F.3d 946, 950 (10th Cir. 2001).

In its motion for summary judgment, CCS does not argue that plaintiff has not produced evidence of a serious medical need.  Therefore the Court does not address that issue.

**II.      State Law Tort Claim**

CCS asserts that the Court should decline to exercise supplemental jurisdiction over plaintiff's state law claims under 28 U.S.C. § 1367(c) if the Court dismisses plaintiff's federal claim against it.  See Lancaster v. Indep. Sch. Dist. No. 5, 149 F.3d 1228, 1236 (10th Cir. 1998); Taylor v. Meacham, 82 F.3d 1556, 1564 n.11 (10th Cir. 1996) (Tenth Circuit has repeatedly ruled that federal courts may decline to exercise supplemental jurisdiction over remaining state law claims if court dismisses federal claims).  CCS is not entitled to summary judgment on plaintiff's federal claim; therefore this argument is moot.

**IT IS THEREFORE ORDERED** that Defendant Correct Care Solutions' Motion For Summary Judgment (Doc. #31) filed July 1, 2008 be and hereby is **OVERRULED**.

Dated this 30th day of December, 2008 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge