## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| TODD A. RASSEL,             ) | |
|             ) | |
|        Plaintiff,    ) | |
| v.               ) | CIVIL ACTION |
|             ) | |
|             ) | No. 07-3290-KHV |
| ROGER WERHOLTZ, et al.,    ) | |
|             ) | |
|        Defendants.    ) | |

## MEMORANDUM AND ORDER

Todd Rassel brings suit pro se under 42 U.S.C. § 1983 against various employees of the Kansas Department of Corrections ("KDOC"), Correct Care Solutions ("CCS") and Impact Design LLC ("Impact Design") to recover damages for violation of his rights under the First, Eighth and Fourteenth Amendments, as well as injunctive and declaratory relief. Specifically, plaintiff alleges that while he was incarcerated at Lansing Correctional Facility ("LCF"), defendants failed to protect him from exposure to carbon monoxide, failed to treat his serious medical needs and retaliated against him for filing this lawsuit. Plaintiff also asserts state law tort claims. This matter is before the Court on Defendants' Motion To Dismiss (Doc. #40) which Roger Werholtz, David McKune, Ky Hoang and Sharon Blankenship filed July 18, 2008, and the unopposed Motion To Dismiss Plaintiff's Amended Complaint (Doc. #70) which William Shipman and Robert Arnold filed October 20, 2008. For reasons set forth below, the Court finds that both motions should be sustained in part.

## Legal Standards

In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well pleaded facts in the complaint and views them in a light most favorable to plaintiff. See Zinermon v. Burch, 494 U.S. 113, 118 (1990); Swanson v.

<u>Bixler</u>, 750 F.2d 810, 813 (10th Cir. 1984). Rule 12(b)(6) does not require detailed factual allegations, but the complaint must set forth the grounds of plaintiff's entitlement to relief through more than labels, conclusions and a formulaic recitation of the elements of a cause of action. <u>See</u> <u>Bell Atl. Corp. v. Twombly</u>, __ U.S. __, 127 S. Ct. 1955, 1964-65 (2007). In other words, plaintiff must allege facts sufficient to state a claim which is plausible – rather than merely conceivable – on its face. <u>See</u> <u>id.</u> Plaintiff bears the burden to frame a "complaint with enough factual matter (taken as true) to suggest" that he is entitled to relief. <u>Id.</u> at 1965. The Court makes all reasonable inferences in favor of plaintiff. <u>See</u> <u>Zinermon</u>, 494 U.S. at 118; <u>see also</u> Rule 8(a), Fed. R. Civ. P.; <u>Lafoy v. HMO Colo.</u>, 988 F.2d 97, 98 (10th Cir. 1993). The Court, however, need not accept as true those allegations which state only legal conclusions. <u>See</u> <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1110 (10th Cir. 1991).

In reviewing the sufficiency of plaintiff's complaint, the issue is not whether plaintiff will prevail, but whether he is entitled to offer evidence to support his claims. <u>See</u> <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974), <u>overruled on other grounds by</u> <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982). Although plaintiff need not precisely state each element of his claims, he must plead minimal factual allegations on those material elements which he must prove. <u>See</u> <u>Hall</u>, 935 F.2d at 1110. Because plaintiff proceeds pro se, the Court construes his complaint liberally and holds it to a less stringent standard than formal pleadings drafted by lawyers. <u>See</u> <u>id.</u> The Court, however, does not assume the role of advocate for a pro se litigant. <u>See</u> <u>id.</u>

### Facts[1]

Plaintiff alleges the following facts, which the Court accepts as true for purposes of this order:

During all relevant times, plaintiff was incarcerated at LCF. Roger Werholtz is Secretary of the Kansas Department of Corrections and David R. McKune is Warden at LCF.

From May of 2005 to July of 2006, plaintiff worked in the LCF screen printing plant operated by Impact Design LLC. In June of 2005, Sharon Blankenship, LCF safety inspector, was notified of a possible carbon monoxide problem in the printing plant.[2] On July 15, 2005, J.F. Denny Heating and Cooling Company determined that the printing plant had high levels of carbon monoxide. Approximately two weeks later, a Denny engineer inspected the plant for carbon monoxide problems. The engineer found that the plant violated state and local codes because two furnaces and a large gas oven exhausted inside the building with no fresh air intake. In August of 2005,

---

[1]    Defendants in the original complaint (Werholtz, McKune, Hoang and Blankenship) filed their motion to dismiss on July 18, 2008. See Doc. #40. In support of their motion, defendants note that on February 26, 2008, plaintiff filed an amended complaint (Doc. #8) which added new parties and additional claims. Defendants then state as follows:

> Pursuant to 28 U.S.C. §1915 and 42 U.S.C. §1997(e), such claims require judicial screening before they can proceed. Because the new claims have not yet been judicially screened and the newly-added defendants have not been served, the Motion to Dismiss is filed only on behalf of the above-named defendants and only addresses the claims made in Plaintiff's original complaint.

Doc. #40-2, n.1. On July 2, 2008, however, 16 days before defendants filed their motion to dismiss, the Court specifically stated that it had completed the screening process under 28 U.S.C. § 1915A. See Doc. #33. In their reply, defendants note that the amended claims against them are identical to the original claims against them. The Court thus considers defendants' motion to dismiss (Doc. #40) as responsive to the amended complaint.

[2]    The complaint does not allege how Blankenship received notice of the possible problem.

Blankenship tested the printing plant air with a gas sensor which is not designed to detect carbon monoxide.  While she was conducting the test, an unnamed inmate told her that he was having headaches.

CCS provides medical care to inmates at LCF.  On August 23, 2006, plaintiff sought medical treatment from Dr. Hoang and other CCS staff.  Plaintiff complained of severe headaches, dizziness, blurred vision and an inability to eat properly.  Plaintiff explained to Dr. Hoang that he had been exposed to carbon monoxide.  Dr. Hoang "did not want listen to [plaintiff] and did not check into [plaintiff's] allegations of the exposure."  Amended Complaint at 13.  Although CCS staff performed a routine blood test, they did not test him for carbon monoxide poisoning.

In October of 2006, plaintiff filed a grievance complaining of lack of treatment for carbon monoxide poisoning.  Bill Shipman, his unit team leader, denied the grievance.  Plaintiff appealed the denial and on November 21, 2006, William L. Cummings, who was the Kansas Secretary of Corrections at that time, denied the appeal.

On December 5, 2006, plaintiff filed an administrative personal injury claim.  Unnamed officials denied the claim and plaintiff appealed.  On August 23, 2007, plaintiff mailed supporting documents to the claims committee.  Unnamed individuals in the LCF mail room delayed the mail and the claims committee did not receive the documents in time for the scheduled hearing on September 5, 2007.

On November 21, 2007, plaintiff asked Ms. Bell, a member of his unit team, to copy documents for this lawsuit.  Bell told him to leave the papers with her until the next day.  Six days later, someone fired plaintiff from his minimum wage job without explanation.  Plaintiff asked Robert Arnold, his unit team manager, to place him in another minimum wage job.  Arnold told

plaintiff that it was "an administrative decision" not to place him in another job, and that he was not eligible. Plaintiff, however, still met the qualifications. Plaintiff filed a grievance about his termination. When Warden McKune sent plaintiff a response to the grievance, Shipman ripped three pages out of the grievance before he gave it to plaintiff.

Plaintiff continues to suffer severe headaches, blurred vision, dizziness and, recently, memory loss. He asserts that he has not received proper medical care and treatment for these complaints.

<u>Analysis</u>

Liberally construing plaintiff's complaint, it appears that plaintiff claims as follows: (1) Werholtz, McKune and Blakenship violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to protect him from exposure to carbon monoxide and failing to treat his serious medical needs; (2) McKune violated his Fourteenth Amendment due process rights by denying his grievances regarding carbon monoxide exposure; (3) CCS and Hoang violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to treat his serious medical needs; (4) Impact Design and Scott Skinner, Impact Design supervisor, violated his Eighth Amendment right to be free from cruel and unusual punishment by not eliminating carbon monoxide at the LCF printing plant; and (5) Shipman (LCF administrator) and Rob Arnold (LCF Unit Team Manager) violated his right to free speech under the First Amendment when they removed him from his job in retaliation for filing this lawsuit. Plaintiff also appears to assert state law negligence claims against all defendants.[3] Plaintiff sues defendants in their official and personal capacities and

---

[3] The amended complaint also names as defendants "John and Jane Does [who] will be named from K.D.O.C. in Topeka, L.C.F., C.C.S., and Impact Design L.L.C. , and added as found in discovery." Doc. #9 at 19.

seeks injunctive and monetary relief**.**

I.     Motion To Dismiss (Doc. #40)

Werholtz, McKune, Hoang and Blankenship assert that (1) they are entitled to Eleventh Amendment immunity on plaintiff's official capacity claims against them; (2) plaintiff has not alleged facts which entitle him to relief under Section 1983; and (3) the Court should decline to exercise supplemental jurisdiction over plaintiff's state law claims.

A.     Official Capacity Claims - Eleventh Amendment Immunity

Defendants assert that they are entitled to Eleventh Amendment immunity on plaintiff's official capacity claims.  The Eleventh Amendment doctrine of sovereign immunity bars actions for damages against a State, its agencies and its officials acting in official capacities, see Kentucky v. Graham, 473 U.S. 159, 165-169 (1985), including actions arising under Section 1983, see Klein v. Univ. of Kan. Med. Ctr., 975 F.Supp. 1408, 1415 (D. Kan. 1997).  An action against a state official in his or her official capacity is not a suit against the official, but against the official's office, and accordingly is no different than a suit against the State itself.  Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).  Insofar as defendants are sued in their official capacities, they are entitled to Eleventh Amendment immunity and may not be sued for money damages under 42 U.S.C. § 1983. Id.  Therefore plaintiff's claims for money damages  against Werholtz, McKune, Blankenship and Hoang in their official capacities are dismissed.

B.     Eighth Amendment Claims

1.     Werholtz and  McKune

Plaintiff contends that Werholtz knew about the carbon monoxide problem through documentation, plaintiff's grievance and other administrative remedies but chose to ignore it.

Similarly, plaintiff alleges that by denying plaintiff's grievances, McKune failed to protect him from cruel and unusual punishment.  Werholtz and McKune argue that the Court must dismiss plaintiff's Eighth Amendment claim because plaintiff has not alleged personal participation.

Prison officials are only responsible for their own constitutional violations; liability under Section 1983 cannot rest upon a theory of respondeat superior.  Rizzo v. Goode, 423 U.S. 362 (1976).  A prison official is not liable for the misconduct of a staff member who reports to him or her, unless there is an "affirmative link" between the constitutional violation allegedly committed by the staff member and the official's own conduct.  Meade v. Grubbs, 841 F.2d 1512, 1527-28 (10th Cir. 1988).  An inmate can demonstrate an affirmative link if the supervisor (1) actually participated in the deprivation of the inmate's constitutional right, (2) acquiesced in the staff member's deprivation of the inmate's constitutional right, or (3) established a policy or custom which authorized or permitted the staff member to deprive an inmate of his constitutional rights.  Id.; see also Mitchell v. Maynard, 80 F.3d 1433, 1441 (10th Cir. 1996).  Likewise, "[t]he general responsibility of a warden for supervising the operation of a prison is not sufficient to establish personal liability."  Rider v. Werholtz, 548 F. Supp.2d 1188, 1200 (D. Kan. 2008) (citing Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995)).  "A warden is not liable for an isolated failure of his subordinates to carry out prison policies . . . unless the subordinates are acting (or failing to act) on the warden's instructions."  See Steidl v. Gramley, 151 F.3d 739, 741 (7th Cir. 1998).

Defendants argue that plaintiff does not allege facts which demonstrate personal participation, exercise of control or direction, or failure to supervise by Werholtz or McKune.  The Court agrees that plaintiff alleges no facts which link Werholtz and McKune to the alleged

constitutional deprivation.  Plaintiff merely asserts that Werholtz, as Secretary of the Kansas Department of Corrections, has authority over all KDOC employees and is responsible for plaintiff's health and safety.  Similarly, plaintiff asserts that McKune, as warden has authority over all employees at LCF.  Supervisory liability, however, requires more than "a mere right to control employees."  Serna v. Colo. Dep't of Corr., 455 F.3d 1146, 1153 (10th Cir. 2006).

As Werholtz and McKune point out, plaintiff's only other basis for naming them as defendants is his perception that they improperly denied his grievance.  Denial of plaintiff's grievances is insufficient to establish personal participation in the alleged constitutional violations.  See Larson v. Meek, 24 0 Fed. Appx. 777, 781 (10th Cir. 2007).  Without allegations that Werholtz and McKune personally participated in the denial of plaintiff's Eighth Amendment rights or had an "affirmative link" to the alleged constitutional violation, plaintiff's claim must fail as a matter of law.

   2. <u>Blankenship</u>

Blankenship asserts that the Court must dismiss plaintiff's Eighth Amendment claims because (1) the statute of limitations bars them and in the alterative, (2) plaintiff fails to state a claim for an Eighth Amendment violation.

Blakenship first contends that the two-year statute of limitations bars plaintiff's claims against her under 42 U.S.C. §1983.  See, e.g., Wallace v. Kato, 549 U.S. 384, 387 (2007) (Section 1983 claims subject to state law statute of limitations for tort action for recovery of damages for personal injuries); see K.S.A. § 60-513(a)(4)).  Plaintiff concedes that a two-year statute of limitations applies to his Section 1983 claims.  He argues that the statute did not begin to run, however, until he saw a doctor for complaints of headaches in August of 2006.

Federal law governs accrual of federal causes of action and dictates when the statute of

limitations begins to run for the purposes of Section 1983.  Smith v. City of Enid, 149 F.3d 1151, 1154 (10th Cir. 1998).  A civil rights action accrues when plaintiff knows or has reason to know of the injury which is the basis of the action.  Baker v. Bd. of Regents, 991 F.2d 628, 632 (10th Cir. 1993).  In a Section 1983 case, the injury is the violation of a constitutional right.  Section 1983 claims therefore accrue when plaintiff knows or should know that his constitutional rights have been violated.  Smith, 149 F.3d at 1154.

Plaintiff alleges that Blankenship subjected him to cruel and unusual punishment when she inaccurately measured the carbon monoxide level in the printing plant, allowed high levels of carbon monoxide in the printing plant and failed to contact the heating company which found the carbon monoxide problem.  Blankenship argues that the statute of limitations began to run in August of 2005 when she tested the printing plant for carbon monoxide, and plaintiff did not file his complaint until more than two years later in November of 2007.  Plaintiff responds that the statute of limitations did not begin to run until September of 2006 when he saw Hoang for headaches and dizziness.  Plaintiff argues that the two-year statute of limitation did not bar the lawsuit which he filed 14 months later. The Court agrees that Blakenship has not shown as a matter of law that the statute of limitations bars plaintiff's claims against her.

Blakenship argues that even if plaintiff's Eighth Amendment claim was timely, plaintiff has not  stated a claim on which relief can be granted.  She asserts that plaintiff has not alleged any facts that she possessed a sufficiently culpable state of mind or that her acts or omissions arose from deliberate indifference to plaintiff's health or safety.  See Farmer v. Brennan, 511 U.S. 825, 834 (1994).  Plaintiff merely asserts that Blankenship was notified about the carbon monoxide problem and did not use the correct meter to test for it.  The Court finds that such conclusory allegations are

insufficient to state a cognizable claim under Section 1983.

      3.    <u>Hoang</u>

Plaintiff claims that Hoang "is responsible for the inmates medical care at the facility" and that Hoang "did not want to listen to me nor did he check into the allegations of the exposure." Hoang contends that plaintiff's bare allegations do not set out an actionable Eighth Amendment claim.

To establish an Eighth Amendment violation, plaintiff must demonstrate that defendant acted with deliberate indifference to his serious medical needs. <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976). "Deliberate indifference" includes both an objective and a subjective component. <u>Sealock v. Colo.</u>, 218 F.3d 1205, 1209 (10th Cir. 2000). The objective component requires that the deprivation is "sufficiently serious." <u>Id.</u> (citing <u>Farmer</u>, 511 U.S. at 834). The subjective component requires that a prison official "knows of and disregards an excessive risk to inmate health or safety." <u>Id.</u>

A medical need is serious if a physician has diagnosed it as requiring treatment or if it is so obvious that even a lay person would easily recognize the need for a doctor's attention. <u>See</u> <u>Sealock</u>, 218 F.3d at 1209; <u>Ramos v. Lamm</u>, 639 F.2d 559, 575 (10th Cir. 1980). Indications that a prisoner has a "serious" need for medical treatment include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; and the existence of chronic and substantial pain. <u>Riddle v. Mondragon</u>, 83 F.3d 1197, 1202 (10th Cir. 1996) (citing <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059-60 (9th Cir. 1992)). A delay in medical care is an Eighth Amendment violation when plaintiff can show that it resulted in substantial harm, <u>Oxendine v. Kaplan</u>, 241 F.3d

1272, 1276 (10th Cir. 2001), such as lifelong handicap, permanent loss or considerable pain.  Garrett

v. Stratman, 254 F.3d 946, 950 (10th Cir. 2001).

Here, plaintiff has alleged that Hoang knew of his complaints (which plaintiff stated were

related to carbon monoxide) but did not direct further testing or treatment to address his symptoms.

Complaints of dizziness, headaches and visual problems are indications of a serious need for medical

treatment.  Further, plaintiff has alleged that Hoang disregarded his complaints.  Hoang is not

entitled to dismissal of plaintiff's Eighth Amendment claim.

C.     Fourteenth Amendment Due Process Claims

Liberally construed, plaintiff alleges that Werholtz and McKune violated his due process

rights by denying his grievance.  As noted, denial of a grievance is insufficient to establish personal

participation pursuant under Section 1983.  The Court therefore finds that plaintiff's Fourteenth

Amendment claims against Werholtz and McKune should be dismissed for failure to state a claim.

D.     State Law Claims

Federal district courts have supplemental jurisdiction over state law claims that are part of

the "same case or controversy" as federal claims. 28 U.S.C. § 1367(a).  Werholtz, McKune,

Blankenship and Hoang argue that because plaintiff has not alleged or shown a violation of federally

protected rights, the Court should not exercise supplemental jurisdiction over plaintiff's unspecified

state law claims.

Under 28 U.S.C. § 1367(c)(3), a district court has discretion to decline to exercise

supplemental jurisdiction once it has dismissed the claims over which it had original jurisdiction.

Lancaster v. Indep. Sch. Dist. No. 5, 149 F.3 d 1228, 1236 (10th Cir. 1998).  If the court dismisses

all federal claims before trial, it will generally decline to exercise jurisdiction over the remaining state

law claims.  Thatcher Enters. v. Cache County Corp., 902 F.2d 1472, 1478 (10th Cir. 1990).  Because some federal claims remain in the case, the Court will continue to exercise jurisdiction over plaintiff's state law claims at this time.

II.    Motion To Dismiss (Doc. #70)

Plaintiff alleges that Shipman and Arnold retaliated against him for filing this lawsuit. Shipman and Arnold assert (1) that they are entitled to Eleventh Amendment immunity in their official capacities, (2) that plaintiff has not stated a claim for violation of his First Amendment rights and (3) the Court should decline to exercise supplemental jurisdiction over plaintiff's state law claims.

A.    Official Capacity Claims - Eleventh Amendment Immunity

Defendants assert that they are entitled to Eleventh Amendment immunity on plaintiff's official capacity claims.  As set out above, the Eleventh Amendment doctrine of sovereign immunity bars actions for damages against a State, its agencies and its officials acting in official capacities, see Graham, 473 U.S. at 165-677, including actions arising under Section 1983, see Klein v. Univ. of Kan. Med. Ctr., 975 F.Supp. 1408, 1415 (D. Kan. 1997).  Insofar as defendants are sued in their official capacities, they are entitled to Eleventh Amendment immunity and may not be sued for money damages under 42 U.S.C. § 1983.  To the extent that plaintiff brings claims for money damages against Shipman and Arnold in their official capacities, they are entitled to immunity under the Eleventh Amendment.

B.    First Amendment Retaliation Claim

Shipman and Arnold assert that plaintiff has not alleged sufficient facts which entitle him to relief on his First Amendment retaliation claim under Section 1983.

-12-

Absent clear abuse or caprice in the exercise of discretion, prison management is not subject to judicial review.  See Marchesani v. McCune, 531 F.2d 459, 462 (10th Cir. 1976).  A prison official, however, may not retaliate against an inmate for exercising a constitutional right.  See Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998). This principle applies even where the action taken in retaliation would be otherwise permissible.  Id. The Tenth Circuit has noted:

> [I]t is not the role of the federal judiciary to scrutinize and interfere with the daily operations of a state prison, and our retaliation jurisprudence does not change this role. Obviously, an inmate is not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he has engaged in protected activity. Accordingly, a plaintiff must prove that but for the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place. An inmate claiming retaliation must allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights.

Id. (citations and quotations omitted).

The First Amendment protects the right to free speech and the right to petition the government for redress of grievances.  See Crawford-El v. Britton, 523 U.S. 574, 592 (1998).  Any form of official retaliation for exercising one's right to petition the government constitutes an infringement of that freedom.  Worrell v. Henry, 219 F.3d 1197, 1212 (10th Cir. 2000).  Absent an employment or a contractual relationship between the parties, plaintiff must allege and prove the following three elements: (1) that he engaged in constitutionally protected activity; (2) that defendant caused him to suffer an injury which would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that defendant's conduct was substantially motivated by plaintiff's exercise of constitutionally protected conduct.  See id.

The Court first addresses whether plaintiff has stated a claim for violation of his First Amendment rights.  Plaintiff meets the first element because he filed this lawsuit against prison

officials, which is constitutionally protected activity.  See Purkey v. Green, 28 Fed. Appx. 736,

745-46 (10th Cir. Aug.17, 2001) (punishing prisoner for filing grievances would state claim for denial

of access to courts and First Amendment violation); Smith v. Maschner, 899 F.2d 940, 947-48 (10th

Cir. 1990) (prison officials may not retaliate against inmate for exercising constitutional right, even

where action taken in retaliation would otherwise be permissible).  As to the second element, plaintiff

alleges that six days after he asked Bell to copy documents for this lawsuit, he was fired from a

minimum wage job.  The allegation that plaintiff lost his job is sufficient to allege that he suffered

an injury which would chill a person of ordinary firmness from continuing to file lawsuits against

prison officials.  Plaintiff does not allege, however, that Shipman, Arnold or any other particular

defendant caused his termination.  Finally, because plaintiff has not alleged that Shipman or Arnold

made the decision to fire him, he has not alleged facts sufficient to show that the challenged action

was substantially motivated by plaintiff's filing of the lawsuit.[4]

   **IT IS THEREFORE ORDERED** that Defendants' Motion To Dismiss (Doc. #40) which

Roger Werholtz, David McKune, Ky Hoang and Sharon Blankenship filed on July 18, 2008 and the

Motion To Dismiss Plaintiff's Amended Complaint (Doc. #70) which William Shipman and Robert

---

[4]      As part of his retaliation claim, plaintiff asserts that Shipman and Arnold did not train
the unit team on properly copying paperwork.  In support of this claim, plaintiff alleges that he asked
Bell, who is not a defendant in this matter, to copy legal paperwork which was then out of his sight
for 24 hours.  Plaintiff apparently claims that he was terminated from his job six days later because
someone read his legal papers, and that if Bell had been properly trained on copying paperwork, he
would not have lost his job.  Plaintiff does not allege that KDOC staff had access to or knowledge
of his legal paperwork, or that the existence of such paperwork was the motivation for his
termination or the denial of another job.  Moreover, such a claim is improperly predicated on
supervisor liability.  Supervisory liability must be based upon active unconstitutional behavior and
more than a mere right to control employees.  See Serna v. Colo. Dep't of Corr., 455 F.3d 1146,
1153 (10th Cir. 2006) (supervisor liability under § 1983 requires affirmative link between
constitutional deprivation and supervisor's personal participation).

Arnold filed on October 20, 2008 be and hereby are **sustained in part**.  Plaintiff's claims under 42 U.S.C. § 1983 against Werholtz, McKune, Blankenship, Shipman and Arnold be and hereby are **DISMISSED**.

Plaintiff's Eighth Amendment claims under 42 U.S.C. § 1983 against CCS, Ky Hoang, Impact Design, LLC and Scott Skinner, as well as his state law claims against all defendants, remain in the case.

Dated this 6th day of February, 2009 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge