## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| TODD A. RASSEL, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **CIVIL ACTION** |
| | ) | |
| | ) | **No. 07-3290-KHV** |
| ROGER WERHOLTZ, et al., | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Todd Rassel, a former inmate at the Lansing Correctional Facility ("LCF"), brings suit pro se under 42 U.S.C. § 1983 against numerous defendants for violation of constitutional rights under the First, Eighth and Fourteenth Amendments.  Plaintiff also asserts state law claims.  This matter is before the Court on <u>Defendant Correct Care Solutions' Second Motion For Summary Judgment</u> (Doc. #78) filed February 20, 2009.  For reasons set forth below, the Court finds that the motion should be sustained.

## Legal Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  <u>See</u> Fed. R. Civ. P. 56(c); <u>accord</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986); <u>Vitkus v. Beatrice Co.</u>, 11 F.3d 1535, 1538-39 (10th Cir. 1993).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."  <u>Anderson</u>, 477 U.S. at 248.  A "genuine" factual dispute requires more than a mere scintilla of evidence.  <u>Id.</u> at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of

material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991).  Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which [he] carries the burden of proof."  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).  The nonmoving party may not rest on his pleadings but must set forth specific facts.  Applied Genetics, 912 F.2d at 1241.

The Court must view the record in a light most favorable to the party opposing the motion for summary judgment.  Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991).  Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative.  Anderson, 477 U.S. at 250-51.  "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial."  Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P. 56(e).  Rule 56(e) also requires that "copies of all papers or parts thereof referred to in an affidavit be attached thereto or served therewith."  To enforce this rule, the Court ordinarily does not strike affidavits but simply disregards those portions which are not based upon personal knowledge or otherwise do not comply with Rule 56(e).  Maverick Paper Co. v. Omaha Paper Co., Inc., 18 F.Supp.2d 1232, 1234-35 (D. Kan. 1998).

In pro se prisoner litigation, the Tenth Circuit endorses the completion and filing of a "Martinez report" where the prison constructs an administrative record which details the factual investigation of the events at issue. See Martinez v. Aaron, 570 F.2d 317, 319 (10th Cir. 1978). The Court treats a Martinez report like an affidavit, and does not accept the factual findings of the prison investigation when plaintiff has presented conflicting evidence. Green v. Branson, 108 F.3d 1296, 1302 (10th Cir. 1997). The Court also treats the pro se prisoner's complaint, when sworn and made under penalty of perjury, as an affidavit. See id.

Plaintiff's opposition brief sets forth the specific paragraphs in defendant's memorandum that he purports to dispute. With three exceptions, however, he does not refer to those portions of the record on which he relies. See D. Kan. Rule 56.1.[1] The Court recognizes that pro se litigants should not succumb to summary judgment merely because they fail to comply with the technical requirements involved in defending such a motion. See Woods v. Roberts, No. 94-3159, 1995 WL

---

[1]     D. Kan. Rule 56.1 provides in relevant part as follows:

(b) Opposing Memorandum.

(1) A memorandum in opposition to a motion for summary judgment shall begin with a section that contains a concise statement of material facts as to which the party contends a genuine issue exists. Each fact in dispute shall be numbered by paragraph, shall refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, shall state the number of movant's fact that is disputed. (2) If the party opposing summary judgment relies on any facts not contained in movant's memorandum, that party shall set forth each additional fact in a separately numbered paragraph, supported by references to the record, in the manner required by subsection (a), above. All material facts set forth in this statement of the non-moving party shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the reply of the moving party.

65457, at *2 (10th Cir. Feb. 17, 1995); Hass v. U.S. Air Force, 848 F.Supp. 926, 929 (D. Kan. 1994). The Court has therefore searched the record to determine whether genuine issues of material fact preclude the entry of summary judgment.

### Factual Background

The following material facts are uncontroverted or, where controverted, set forth in a light most favorable to plaintiff:

From September of 2004 through the summer of 2008, Rassel was incarcerated at Lansing Correctional Facility ("LCF"). Defendant Correct Care Solutions ("CCS") provides medical services at the LCF clinic.

On August 8, 2006, Rassel went to the clinic complaining of headaches, vision problems and dizziness. Rassel told the nurse that he had been exposed to carbon monoxide at the prison screen printing plant. The nurse examined Rassel and scheduled him to see a doctor. See Exhibit 2 to Defendant's Memorandum In Support Of Second Motion For Summary Judgment (Doc. # 79) filed February 20, 2009, at 11. On August 15, 2006, Dr. Hoang examined Rassel. He assessed Rassel with dizziness and prescribed Antivert, a medicine used to treat dizziness. Id. at 8. On August 25, 2006, Dr. Hoang examined Rassel for complaints of dizziness, fatigue and severe frontal headaches. Objective testing, including a HEENT (head, eyes, ears, nose and throat) exam and a Gilbert headache questionnaire, revealed no explanation for the headaches. Dr. Hoang prescribed Periactin and Motrin for the headaches. Id. at 4. Dr. Hoang ordered a blood test for Rassel. The results were all within the reference range. Id. at 22.

On October 25, 2006, Dr. Hoang examined Rassel for complaints of headaches. Dr. Hoang assessed a tension headache and prescribed ibuprofen. Id. at 4. On December 11, 2006 Rassel

visited the clinic complaining of headaches and the staff made an appointment for him to see Dr. Hoang. Id. at 9. On December 13, 2006, Dr. Hoang examined Rassel and prescribed Naprosyn for tension headaches. Id. at 2.

On February 14, 2007, Dr. Hoang examined Rassel, who continued to complain of headaches. Dr. Hoang's notes indicate that Rassel told him that the naprosyn worked but that it upset his stomach, so he stopped using it. Id. at 1; cf. Plaintiff's Ex. 3 at 5 (on January 10, 2007, Rassel reported to nurse that "[N]aprosyn isn't doing nothing for me"). Dr. Hoang assessed non specific headaches and prescribed Elavil.

On December 3, 2006, nurse Melissa Butner examined Rassel after he complained of vision problems. She administered the Snellen test, which measures eye function, and referred Rassel to an optometrist. See Defendant's Ex. 2 at 14. On March 14, 2007, Dr. Kyle Kelly examined Rassel and prescribed eyeglasses. Id. at 12.

## Analysis

Plaintiff alleges that CCS subjected him to cruel and unusual punishment in violation of the Eighth Amendment by denying him treatment for serious medical symptoms which he attributes to carbon monoxide poisoning. CCS asserts that it is entitled to summary judgment because plaintiff cannot show that CCS acted with deliberate indifference to his serious medical needs.

As a preliminary matter, in Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978), the Supreme Court held that a municipality cannot be held liable under 42 U.S.C. § 1983 merely on account of the unauthorized acts of its agents. Id. at 691-94 (rejecting Section 1983 claim based on respondeat superior theory). Courts have extended Monell to Section 1983 claims against private defendants. See Dubbs v. Head Start, Inc., 336 F.3d 1194, 1216 (10th Cir. 2003) (citations omitted) (citing

Monell, 436 U.S. at 69); see also Dickerson v. Leavitt Rentals, 995 F. Supp. 1242, 1247 (D. Kan. 1998), aff'd, 153 F.3d 726 (10th Cir. 1998).  Therefore, to succeed on his Section 1983 claim against CCS, plaintiff must allege and prove that CCS caused a constitutional violation through an official policy or custom which was the direct cause or moving force behind the constitutional violation. See Pembaur v. City of Cincinnati, 475 U.S. 469, 480-85 (1986).

To establish an Eighth Amendment violation, a prisoner must have suffered "'acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.'" Callahan v. Poppell, 471 F.3d 1155, 1159 (10th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  "Deliberate indifference" includes both an objective and a subjective component. Sealock v. Colo., 218 F.3d 1205, 1209 (10th Cir. 2000).  The objective component requires that the deprivation is "sufficiently serious."  Id. (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)).  The subjective component requires that a prison official "knows of and disregards an excessive risk to inmate health or safety."  Id.

CCS does not dispute that the record contains evidence of a serious medical need.[2]  CCS asserts that plaintiff cannot show that it acted with deliberate indifference to that need, however, because it promptly and appropriately treated plaintiff for his complaints of headaches and vision problems.

---

[2]      A medical need is serious if a physician has diagnosed it as requiring treatment or if it is so obvious that even a lay person would easily recognize the need for a doctor's attention. See Sealock, 218 F.3d at 1209.  Indications that a prisoner has a "serious" need for medical treatment include the "'existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; and the existence of chronic and substantial pain.'"  Riddle v. Mondragon, 83 F.3d 1197, 1202 (10th Cir. 1996) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

After plaintiff began seeking treatment for his headaches and dizziness and vision problems, CCS staff consistently provided treatment for his complaints. In August of 2006, Dr. Hoang conducted a complete physical examination and made an assessment of dizziness and prescribed Antivert. On October 25, 2006, Dr. Hoang conducted a complete physical examination, including a Gilbert headache questionnaire. At that time, Dr. Hoang assessed plaintiff as suffering from a tension headaches and prescribed Motrin. Plaintiff's headaches persisted, however, and he returned to see Dr. Hoang almost two months later. Dr. Hoang changed plaintiff's medication and prescribed Naprosyn for his headaches. When plaintiff returned to see Dr. Hoang on February 14, 2007, he reported that the Naprosyn worked, but that it upset his stomach, so he had stopped taking it.

Viewed in a light most favorable to plaintiff, the record does not support a finding that CCS employees were deliberately indifferent to his serious medical needs.[3] Dr. Hoang conducted full physical examinations, ordered blood tests, and prescribed medications normally used to treat headaches and dizziness. Such actions preclude a finding of deliberate indifference. See Duffield v. Jackson, 545 F.3d 1234, 1238-39 (10th Cir. 2008) (affirming dismissal of Section 1983 claims against physician who examined prisoner, ordered diagnostic tests and prescribed several different medications); see Estelle, 429 U.S. at 106 (prison doctor's negligent diagnosis or treatment of medical condition does not violate Eighth Amendment). Likewise, plaintiff has not demonstrated deliberate indifference with regard to his vision complaints. On December 3, 2006, a nurse

---

[3]     In denying CCS's first motion for summary judgment, the Court noted that the record contained only a brief summary of the medical records and that CCS did not demonstrate that it treated him for symptoms – including dizziness and vision problems – which he attributes to carbon monoxide poisoning. The Court therefore found that viewed in a light most favorable to plaintiff, the record supported a finding that CCS employees and decision makers knew of plaintiff's complaints (which plaintiff believed were related to carbon monoxide) but did not direct further treatment to address his symptoms.

examined plaintiff for his complaints of vision problems, performed a Snellen test and arranged an appointment with an optometrist.  Dr. Kyle Kelly, an optometrist, examined plaintiff's eyes and prescribed eyeglasses.

Plaintiff argues that CCS should have provided treatment by a doctor who specializes in carbon monoxide poisoning.  Plaintiff's contention that CCS denied him treatment by a specialist, however, is insufficient to establish a constitutional violation.  See Duffield, 545 F.3d at 1239 (citing Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980) (decision whether patient requires specialist is decision about course of treatment and negligent treatment of medical conditions does not rise to Eighth Amendment violation)).

**IT IS THEREFORE ORDERED** that Defendant Correct Care Solutions' Second Motion For Summary Judgment (Doc. #78) filed February 20, 2009 be and hereby is **SUSTAINED**.  CCS is entitled to summary judgment on plaintiff's Eighth Amendment Claim.  Plaintiff's state law claim against CCS remains in the case.

Dated this 1st day of June, 2009, at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge