IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TODD A. RASSEL,                          )
                                         )
            Plaintiff,                   )
                                         )
v.                                       )   CIVIL ACTION
                                         )
                                         )   No. 07-3290-KHV
ROGER WERHOLTZ, et al.,                  )
                                         )
            Defendants.                  )
_____)

## MEMORANDUM AND ORDER

Todd Rassel, a former inmate at the Lansing Correctional Facility brings suit pro se under 42 U.S.C. § 1983 against Dr. Ky Hoang for violation of constitutional rights under the Eighth Amendment. Plaintiff also asserts state law negligence claims against Dr. Hoang, Roger Werholtz, David R. McKune, Sharon Blankenship, Bill Shipman and Rob Arnold. In addition, plaintiff brings a state law medical negligence claim against Correct Care Solutions. This matter is before the Court on <u>Defendant Correct Care Solutions' Third Motion For Summary Judgment</u> (Doc. #112) filed August 6, 2009. Plaintiff has not opposed the motion.[1] For reasons set forth below, the Court finds that the motion should be sustained.

---

[1] As noted, CCS filed its third motion for summary judgment on August 6, 2009. Under D. Kan. Rule 6.1(d)(2), plaintiff had until August 29, 2009 to respond to the motion. At the pretrial conference on September 28, 2009, Magistrate Judge James O'Hara noted that plaintiff had failed to timely respond to CCS's third motion for summary judgment. Judge O'Hara then granted plaintiff an extension of time to October 9, 2009 to file a response. Judge O'Hara admonished plaintiff that, "irrespective of his reportedly heavy work schedule, if he fail[ed] to file a response by the extended deadline, the presiding U.S. District Judge, Hon. Kathryn H. Vratil, presumably would grant the motion as unopposed pursuant to D. Kan. Rule 7.4." <u>Order</u> (Doc. #117) filed September 28, 2009. In light of this reminder, the Court will not sua sponte give plaintiff additional time to respond to the third motion for summary judgment. <u>See, e.g.,</u> <u>Yang v. Archuleta,</u> 525 F.3d 925, 927 (10th Cir. 2008) (pro se status does not excuse litigant's obligation to comply with fundamental procedural requirements).

## **Legal Standards**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which [he] carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party may not rest on his pleadings but must set forth specific facts. Applied Genetics, 912 F.2d at 1241.

The Court must view the record in a light most favorable to the party opposing the motion for summary judgment. Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. Anderson, 477 U.S. at 250-51. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion,

and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).

In pro se prisoner litigation, the Tenth Circuit endorses the completion and filing of a "Martinez report" where the prison constructs an administrative record which details the factual investigation of the events at issue. See Martinez v. Aaron, 570 F.2d 317, 319 (10th Cir. 1978). The Court treats a Martinez report like an affidavit, and does not accept the factual findings of the prison investigation when plaintiff has presented conflicting evidence. Green v. Branson, 108 F.3d 1296, 1302 (10th Cir. 1997). The Court also treats the pro se prisoner's complaint, when sworn and made under penalty of perjury, as an affidavit. See id.

**Factual Background**[2]

From September of 2004 through the summer of 2008, Rassel was incarcerated at Lansing Correctional Facility ("LCF"). Defendant Correct Care Solutions ("CCS") provides medical services at the LCF clinic.

---

[2] By not responding to defendant's motion for summary judgment, plaintiff has waived the right to controvert defendant's statement of facts. See D. Kan. Rule 56.1(a) (all material facts set forth in statement of movant deemed admitted for purpose of summary judgment unless specifically controverted by statement of opposing party); see also Luginbyhl v. Corr. Corp. of Am., 216 Fed. Appx. 721, 723 (10th Cir. 2007) (by failing to offer timely response, party may waive right to controvert facts in summary judgment motion); Ellibee v. Hazlett, No. 03-3023-JAR, 2006 WL 3050801, at *2 (D. Kan. Oct. 23, 2006) (pro se litigants governed by same procedural rules as other litigants; on summary judgment, Court accepts as true facts which pro se litigant does not controvert). As necessary, the Court supplements defendant's statement of facts with facts taken from plaintiff's amended complaint (Doc. #9) – which he filed under penalty of perjury – and the report (Doc. #30) which the Kansas Department of Corrections prepared pursuant to Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978). See Hall v. Bellmon, 935 F.2d at 1111 (Martinez report treated as affidavit; complaint treated as affidavit to extent it alleges facts based on plaintiff's personal knowledge and is sworn under penalty of perjury). The Court also supplements defendant's statement of facts with facts alleged in plaintiff's responses to the first two motions for summary judgment for which plaintiff offered sworn testimony or other admissible evidence in support thereof.

On August 8, 2006, Rassel went to the clinic complaining of headaches, vision problems and dizziness. Rassel told the nurse that he had been exposed to carbon monoxide at the prison screen printing plant. The nurse examined Rassel and scheduled him to see a doctor. On August 15, 2006, Dr. Ky Hoang examined Rassel. He assessed Rassel and prescribed Antivert, a medicine used to treat dizziness. On August 25, 2006, Dr. Hoang examined Rassel for complaints of dizziness, fatigue and severe frontal headaches. Objective testing, including a HEENT (head, eyes, ears, nose and throat) exam and a Gilbert headache questionnaire, revealed no explanation for the headaches. Dr. Hoang prescribed Periactin and Motrin for the headaches and ordered a blood test. The results were all within the reference range.

On October 25, 2006, Dr. Hoang examined Rassel for complaints of headaches and assessed a tension headache and prescribed ibuprofen. On December 11, 2006, Rassel visited the clinic complaining of headaches and staff gave him an appointment to see Dr. Hoang. On December 13, 2006, Dr. Hoang examined Rassel and prescribed Naprosyn for tension headaches.

On February 14, 2007, Dr. Hoang examined Rassel, who continued to complain of headaches. Dr. Hoang's notes indicate that Rassel told him that the naprosyn worked but that it upset his stomach so he stopped using it. Dr. Hoang assessed non-specific headaches and prescribed Elavil.

On December 3, 2006, a nurse examined Rassel after he complained of vision problems. She administered the Snellen test, which measures eye function, and referred Rassel to an optometrist. On March 14, 2007, Dr. Kyle Kelly examined Rassel and prescribed eyeglasses.

Plaintiff asserts that CCS failed to provide adequate medical care for the complaints described above. During the pretrial conference, plaintiff "confirmed that the only employees of

CCS whom he contends acted negligently in providing him medical care were three nurses. The only nurse whose full name plaintiff could recall was Melissa Butner." Pretrial Order (Doc. #119) filed October 9, 2009 at 8 n.2.

On June 2, 2009, the Court entered an amended scheduling order in this case. See Doc. #106. The scheduling order required plaintiff by July 20, 2009, to serve disclosures required by Rule 26(a)(2), Fed. R. Civ. P., including reports from experts. Discovery deadlines are to be taken seriously and strictly followed. See Rios v. Bigler, 847 F.Supp. 1538, 1550 (D. Kan. 1994). As of the date of this memorandum and order, plaintiff has not disclosed any expert witness.

## Analysis

CCS asserts that it is entitled to summary judgment because plaintiff has no evidence that it breached a duty of care or that its alleged breach caused him damage.

Under Kansas law, to recover for negligence, plaintiff must prove a duty, a breach of duty, injury and a causal connection between the breach and the injury suffered. Yount v. Deibert, 282 Kan. 619, 623-24, 147 P.3d 1065, 1070 (Kan. 2006). The breach of duty must be the actual and proximate cause of the injury. Hale v. Brown, 287 Kan. 320, 322, 197 P.3d 438, 440 (Kan. 2008). (citing Esquivel v. Watters, 286 Kan. 292, 296, 183 P.3d 847 (2008)). A claim of medical malpractice requires the same elements of proof as any negligence action. Hare v. Wendler, 263 Kan. 434, 440, 949 P.2d 1141, 1145 (1997) (citing Sharples v. Roberts, 249 Kan. 286, 294, 816 P.2d 390, 397 (1991)).

The Kansas Supreme Court has described plaintiff's duty to show causation in medical malpractice cases: "there must be a causal connection between the negligent act and the injury or that the act caused or contributed to the injury." Hare, 263 Kan. at 440, 949 P.2d at 1145. As this

Court has explained, negligence is never presumed, and may not be inferred merely from a lack of success or an adverse result from treatment:

> The plaintiff in a medical malpractice case bears the burden of showing not only the doctor's negligence, but that the negligence caused the injury. Except where the lack of reasonable care or the existence of proximate cause is apparent to the average layman from common knowledge or experience, expert testimony is required in medical malpractice cases to establish the accepted standard of care and to prove causation.

Esposito v. United States, No. 02-2078, 2005 WL 246777, at *4 (D. Kan. Jan. 31, 2005) (citing Bacon v. Mercy Hosp. of Ft. Scott, 243 Kan. 303, 307, 756 P.2d 416, 420 (1988)).

CCS asserts that it is entitled to summary judgment because plaintiff can provide no expert opinion that it deviated from the applicable standards of care or caused any injury to plaintiff. CCS points out that plaintiff has not (1) disclosed any expert medical reports, (2) designated an expert witness or (3) disclosed any expert witness reports. The deadlines for doing so are well past. Plaintiff has not responded to defendant's motion and does not seek additional time to obtain expert testimony. CCS argues that without expert testimony on the standard of care and causation, plaintiff cannot establish these essential elements of a medical negligence case. See Hare, 263 Kan. at 440, 949 P.2d at 1145.

Kansas recognizes a "common knowledge exception" to the general rule requiring expert testimony to establish the elements of a medical negligence case. The common knowledge exception applies only if what plaintiff alleges about his diagnosis, treatment and care is so obviously lacking in reasonable care and the results are so bad that the lack of reasonable care would be apparent to and within the common knowledge and experience of a lay person. See Sharples, 249 Kan. at 296-97, 816 P.2d at 398 (plaintiff alleged he lost kidney because of doctor's failure to perform tests or refer to urologist; court found that he did not establish that earlier diagnosis and

treatment would have resulted in better outcome). The exception must be applied on a case-by-case basis. As noted, plaintiff has not responded to the motion for summary judgment and does not invoke the common knowledge exception. Further, plaintiff does not point to specific acts or omissions by CCS employees that allegedly breached any standard of care or that caused him damage. The record contains no evidence that CCS employees deviated from the standard of care, or that any such deviations caused injury to plaintiff. See Esposito, 2005 WL 246777 at *5. CCS is therefore entitled to summary judgment on plaintiff's state law claim of medical negligence.

**IT IS THEREFORE ORDERED** that Defendant Correct Care Solutions' Third Motion For Summary Judgment (Doc. #112) filed August 6, 2009 be and hereby is **SUSTAINED**. Defendant Correct Care Solutions is **DISMISSED** from the case.

Plaintiff's 42 U.S.C. § 1983 claim against Dr. Ky Hoang for violation of constitutional rights under the Eighth Amendment and his state law negligence claims against Dr. Hoang, Roger Werholtz, David R. McKune, Sharon Blankenship, Bill Shipman and Rob Arnold remain in the case.

Dated this 20th day of October, 2009, at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge
