# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| TODD A. RASSEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION |
| ) | |
| ) | No. 07-3290-KHV |
| ROGER WERHOLTZ, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Todd Rassel, a former inmate at the Lansing Correctional Facility ("LCF"), brings suit pro se against numerous defendants. Plaintiff alleges under 42 U.S.C. § 1983 that Dr. Ky Hoang, a prison physician, violated his constitutional rights under the Eighth Amendment. Plaintiff also asserts state law claims for negligence against Dr. Hoang and various other defendants. This matter is before the Court on Defendants' Motion For Summary Judgment (Doc. #121) which Roger Werholtz, David McKune, Ky Hoang, William Shipman, Robert Arnold and Sharon Blakenship filed October 15, 2009. Plaintiff has not opposed defendants' motion.

Pursuant to D. Kan. Rule 7.4, if a respondent fails to file a timely response, "the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice." By failing to file a timely response, plaintiff waived the right to file a response or to controvert the facts asserted in the summary judgment motion. Reed v. Bennett, 312 F.3d 1190, 1194 (10th Cir. 2002); see D. Kan. Rule 7.4 (failure to timely file response brief shall constitute waiver of right to file brief except on showing of excusable neglect). When deciding whether to enter summary judgment against a non-responding party, the Court cannot simply grant the motion as uncontested under D. Kan. Rule 7.4, but instead must determine whether summary judgment is

appropriate under Rule 56(e), Fed. R. Civ. P.  See Reed, 312 F.3d at 1195.  For reasons set forth below, the Court sustains defendants' motion for summary judgment.

## **Legal Standards**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  See Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."  Anderson, 477 U.S. at 248.  A "genuine" factual dispute requires more than a mere scintilla of evidence.  Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991).  Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which [he] carries the burden of proof."  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party may not rest on his pleadings but must set forth specific facts.  Applied Genetics, 912 F.2d at 1241.

The Court must view the record in a light most favorable to the party opposing the motion for summary judgment.  Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991).  Summary judgment may be granted if the nonmoving party's evidence is merely

colorable or is not significantly probative. Anderson, 477 U.S. at 250-51. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).

In pro se prisoner litigation, the Tenth Circuit endorses the completion and filing of a "Martinez report" where the prison constructs an administrative record which details the factual investigation of the events at issue. See Martinez v. Aaron, 570 F.2d 317, 319 (10th Cir. 1978). The Court treats a Martinez report like an affidavit, and does not accept the factual findings of the prison investigation when plaintiff has presented conflicting evidence. Green v. Branson, 108 F.3d 1296, 1302 (10th Cir. 1997). The Court also treats the pro se prisoner's complaint, when sworn and made under penalty of perjury, as an affidavit. See id.

## Factual Background

The following material facts are uncontroverted.[1]

From September of 2004 through the summer of 2008, Rassel was incarcerated at Lansing

---

[1] As noted, by not responding to defendants' motion for summary judgment, plaintiff has waived the right to controvert defendants' statement of facts. See D. Kan. Rule 56.1(a) (all material facts set forth in statement of movant deemed admitted for purpose of summary judgment unless specifically controverted by statement of opposing party); see also Luginbyhl v. Corr. Corp. of Am., 216 Fed. Appx. 721, 723 (10th Cir. 2007) (by failing to offer timely response, party may waive right to controvert facts in summary judgment motion); McGuire v. Hrabe, No. 07-3147-KHV, 2008 WL 4305437, at *2 (D. Kan. Sept. 18, 2008) (pro se litigant governed by same procedural rules as other litigants; on summary judgment, Court accepts as true facts which pro se litigant does not controvert). As necessary, the Court supplements defendants' statement of facts with facts taken from plaintiff's amended complaint (Doc. #9) filed February 28, 2008 – which he filed under penalty of perjury – and the report (Doc. #30) filed June 19, 2008 which the Kansas Department of Corrections prepared pursuant to Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978). See Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991) (Martinez report treated as affidavit; complaint treated as affidavit to extent it alleges facts based on plaintiff's personal knowledge and is sworn under penalty of perjury).

Correctional Facility ("LCF"). During all relevant times, Roger Werholtz was Secretary of the Kansas Department of Corrections and David R. McKune was Warden at LCF.

From May of 2005 to August of 2006, Rassel worked in the LCF screen printing plant operated by Impact Design LLC. Soon after he began work there, he began to suffer headaches.

On August 8, 2006, Rassel went to the LCF clinic complaining of headaches, vision problems and dizziness. Rassel told the nurse that he had been exposed to carbon monoxide at the printing plant. The nurse examined Rassel and scheduled him to see a doctor.

On August 15, 2006, Dr. Ky Hoang examined Rassel. He assessed Rassel with dizziness and prescribed Antivert, a medicine used to treat dizziness. On August 25, 2006, Dr. Hoang examined Rassel for complaints of dizziness, fatigue and severe frontal headaches. Objective testing, including a HEENT (head, eyes, ears, nose and throat) exam and a Gilbert headache questionnaire, revealed no explanation for the headaches. Dr. Hoang prescribed Periactin and Motrin for the headaches but Rassel did not come back to the clinic to obtain the medication. Dr. Hoang ordered a blood test for Rassel. The results were all within the reference range.

On October 18, 2006, Rassel gave Bill Shipman, his Unit Team Leader, a grievance alleging that he was exposed to high levels of carbon monoxide at the Impact Design Building. He claimed that he needed medical attention because his "eyes were failing" and he was having headaches. He alleged that "Dr. Hong (sic) thinks [I am] crazy and . . . he won't talk about it." Defendants' Ex. 3 at 1. He claimed that he had documentation from "Denny heating and cooling stating his claims are valid and that he has been in heating and cooling all his life and has never seen a building so against code." Id. The record does not contain a signed affidavit from J.F. Denny or from any employee regarding plaintiff's alleged exposure to elevated levels of carbon monoxide.

Shipman forwarded the grievance to Lt. Sharon Blankenship, LCF fire and safety director. On October 23, 2006, Lt. Blankenship responded to plaintiff's grievance. She reported that she had tested several areas at LCF (including the Impact Design facility) for solvent vapors because she had smelled chemical odors in several areas. She did not test for carbon monoxide, however, because it is odorless and "without an inquiry or complaint from inmates, staff or medical staff I would not have reason to suspect there was a problem." See Blankenship Memo, attached as Exhibit to Martinez Report (Doc. #30-3) at 8. Lt. Blakenship also stated that when she tested for solvent vapors, an inmate mentioned in passing that he had been having headaches.

On October 25, 2006, Dr. Hoang examined Rassel for complaints of headaches. Dr. Hoang assessed a tension headache and prescribed ibuprofen.

Sometime in late October of 2006, Rassel filed another grievance, alleging that several inmates had been subjected to high levels of carbon monoxide over the past five years. On October 31, 2006, Shipman informed Rassel that he had concluded that the grievance was invalid because (1) tests did not reflect a high level of carbon monoxide, (2) Rassel did not pick up his medication and (3) lab work was within normal limits. Rassel asked Shipman to forward his grievance to the Warden's Office. Warden McKune concluded that Shipman's response was appropriate and correct.

Plaintiff then appealed the grievance to William L. Cummings, Secretary of Corrections. On November 20, 2006, Lt. Blakenship obtained an independent test of the air quality in the LCF printing plant from the local fire department. Based on that test, Secretary Cummings responded to Rassel's appeal as follows:

> Mr. Rassel claims that inmates are being required to work in an environment where there are excessive levels of carbon monoxide.

> On November 20, 2006, an independent representative from the Delaware Township
> Fire Department conducted an air quality of the area that is the subject of this
> grievance. There was no evidence of an excessive level of carbon monoxide as is
> alleged by [Rassel].

Cummings Letter, attached as Exhibit to Martinez Report (Doc. #30-3), at 10.

On December 3, 2006, nurse Melissa Butner examined Rassel after he complained of vision problems. She administered the Snellen test, which measures eye function, and referred Rassel to an optometrist.[2] On December 11, 2006, Rassel visited the clinic complaining of headaches and the staff made an appointment for him to see Dr. Hoang. On December 13, 2006, Dr. Hoang examined Rassel and prescribed Naprosyn for tension headaches.

On February 14, 2007, Dr. Hoang examined Rassel, who continued to complain of headaches. Dr. Hoang's notes indicate that Rassel told him that the Naprosyn worked but that it upset his stomach, so he stopped using it. Dr. Hoang assessed non-specific headaches and prescribed Elavil.

On March 1, 2007, Melissa McDonald, Industrial Hygiene Consultant, conducted an on-site inspection of the LCF printing plant to check for unsafe or unhealthy working conditions. She conducted air monitoring to determine potential exposures to carbon monoxide and carbon dioxide. The average detected readings by the two ovens were 1.4 ppm and 1.3 ppm. The permissible exposure limit of carbon monoxide is 50 ppm, based on an eight hour time weighted average. On August 9, 2007, Charles Simmons, Deputy Secretary of Facilities Management, wrote Rassel a letter which stated as follows:

> [on] March, 2007 an individual from the Industrial Safety and Health division of the

---

[2] On March 14, 2007, Dr. Kyle Kelly examined Rassel and prescribed eyeglasses.

- 6 -

> Kansas Department of Labor conducted an on-site inspection of the [printing plant at LCF]. The conclusion from that inspection was the following: 'There appears to be no health risk due to over exposure to either carbon monoxide or carbon dioxide.' The inspection did not detect excessive levels of carbon monoxide.

Defendants' Ex. 8 at 1.

On April 2, 2008, the Regional Medical Director of the LCF clinic, David Lawhorn, M.D., prepared a summary of Rassel's complaints. Dr. Lawhorn indicated that he could not find any enclosed source of carbon monoxide at the work environment. Additionally, he could not find any other patients alleging similar complaints. Dr. Lawhorn stated that even if Rassel had been exposed to carbon monoxide, the exposure would "resolve spontaneously once away from the source over a short period of time anyway." Dr. Lawhorn explained that a person may be "exposed to carbon monoxide as described above but not to carbon monoxide poisoning." He found that the alleged exposure to carbon monoxide was not related to the ongoing headaches. He concluded that there was "no medical justification" for any "alleged carbon monoxide poisoning." Defendants' Ex. 9 at 2.

On August 21, 2009, Chris D. Fevurly, M.D. prepared a Medical Advisory Review and concluded that Rassel's "current complaints of headache, dizziness, tinnitus and diminishment of cognitive skills ha[ve] no causal relationship to the alleged exposures to CO." Defendants' Ex. 10 at 5.

Plaintiff filed suit against various employees of the Kansas Department of Corrections ("KDOC"), Correct Care Solutions ("CCS") and Impact Design LLC ("Impact Design") to recover damages for violation of his rights under the First, Eighth and Fourteenth Amendments, as well as injunctive and declaratory relief. Plaintiff alleged that while he was incarcerated at LCF, defendants failed to protect him from exposure to carbon monoxide, failed to treat his serious medical needs and

retaliated against him for filing this lawsuit. Plaintiff also asserted state law tort claims. Over the course of this litigation, the Court has sustained in whole or in part several motions to dismiss and for summary judgment. See, e.g., Doc. #76 filed February 6, 2009; Doc. #104 filed June 1, 2009; Doc. #123 filed October, 20, 2009. After those rulings, plaintiffs' remaining claims include a claim against Dr. Ky Hoang under 42 U.S.C. § 1983 for violation of his Eighth Amendment rights and state law negligence claims against Dr. Hoang, Secretary Werholtz, Warden McKune, William Shipman, Robert Arnold and Lt. Blankenship.

**Analysis**

**I.   Eighth Amendment Claim Against Dr. Hoang**

Plaintiff alleges that Dr. Hoang subjected him to cruel and unusual punishment in violation of the Eighth Amendment by denying him treatment for serious medical symptoms related to carbon monoxide poisoning. Dr. Hoang asserts that he is entitled to summary judgment because plaintiff cannot show that he acted with deliberate indifference to plaintiff's serious medical needs.

To establish an Eighth Amendment violation, a prisoner must have suffered "'acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.'" Callahan v. Poppell, 471 F.3d 1155, 1159 (10th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). "Deliberate indifference" includes both an objective and a subjective component. Sealock v. Colo., 218 F.3d 1205, 1209 (10th Cir. 2000). The objective component requires that the deprivation is "sufficiently serious." Id. (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). The subjective component requires that a prison official "knows of and disregards an excessive risk to inmate health or safety." Id.

Dr. Hoang does not dispute that the record contains evidence of a serious medical need.[3] He asserts, however, that plaintiff cannot show that he acted with deliberate indifference to that need because he promptly and appropriately treated plaintiff for his complaints of headaches and vision problems.

The record reflects that after plaintiff began seeking treatment for headaches and dizziness and vision problems, Dr. Hoang consistently provided treatment for his complaints. In August of 2006, Dr. Hoang conducted a complete physical examination and made an assessment of dizziness and prescribed Antivert. On October 25, 2006, Dr. Hoang conducted a complete physical examination, including a Gilbert headache questionnaire. At that time, Dr. Hoang assessed plaintiff as suffering from tension headaches and prescribed Motrin. Plaintiff's headaches persisted, however, and he returned to see Dr. Hoang almost two months later. Dr. Hoang changed plaintiff's medication and prescribed Naprosyn for his headaches. When plaintiff returned to see Dr. Hoang on February 14, 2007, he reported that the Naprosyn worked but upset his stomach, so he had stopped taking it.

Viewed in a light most favorable to plaintiff, the record does not support a finding that Dr. Hoang was deliberately indifferent to his serious medical needs. Dr. Hoang conducted full physical examinations, ordered blood tests and prescribed medications normally used to treat

---

[3] A medical need is serious if a physician has diagnosed it as requiring treatment or if it is so obvious that even a lay person would easily recognize the need for a doctor's attention. See Sealock, 218 F.3d at 1209. Indications that a prisoner has a "serious" need for medical treatment include the "'existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" Riddle v. Mondragon, 83 F.3d 1197, 1202 (10th Cir. 1996) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

headaches and dizziness. Such actions preclude a finding of deliberate indifference. See Duffield v. Jackson, 545 F.3d 1234, 1238-39 (10th Cir. 2008) (affirming dismissal of Section 1983 claims against physician who examined prisoner, ordered diagnostic tests and prescribed several different medications); see Estelle, 429 U.S. at 106 (prison doctor's negligent diagnosis or treatment of medical condition does not violate Eighth Amendment).[4] Dr. Hoang is entitled to summary judgment on plaintiff's Eighth Amendment claim.

**II.    State Law Negligence Claims Against Secretary Werholtz, Warden McKune, Dr. Hoang, Shipman, Arnold And Lt. Blankenship**

Plaintiff also asserts state law claims for negligence against Secretary Werholtz, Warden McKune, Dr. Hoang, Shipman, Arnold and Lt. Blankenship. The Court's subject matter jurisdiction over these claims is predicated on supplemental jurisdiction under 28 U.S.C. § 1367(a). Plaintiff does not assert diversity of citizenship. Because the Court has granted summary judgment on plaintiff's federal claims, the Court will determine whether to exercise its supplemental jurisdiction over the remaining state law claims.

The district court may decline to exercise supplemental jurisdiction over a state law claim if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). It is within the sound discretion of the district court to exercise supplemental jurisdiction. Medina v. City of Osawatomie, 992 F.Supp. 1269, 1279 (D. Kan. 1998). In the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point

---

[4] Likewise, plaintiff has not demonstrated deliberate indifference with regard to his vision complaints. On December 3, 2006, a nurse examined plaintiff for his complaints of vision problems, performed a Snellen test and arranged an appointment with an optometrist. Dr. Kyle Kelly, an optometrist, examined plaintiff's eyes and prescribed eyeglasses.

-10-

toward declining to exercise jurisdiction over the remaining state-law claims.  McWilliams v. Jefferson County, 463 F.3d 1113, 1118 (10th Cir. 2006); see Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988).

The Court finds no compelling reasons to exercise supplemental jurisdiction to decide the merits of plaintiff's state law claims.  See Thatcher Enters. v. Cache County Corp., 902 F.2d 1472, 1478 (10th Cir. 1990) (notions of comity and federalism demand that state court try its own lawsuits, absent compelling reasons to contrary).  In the interest of comity and federalism, the Court dismisses plaintiff's state law claims for negligence.

**IT IS THEREFORE ORDERED** that Defendants' Motion For Summary Judgment (Doc. #121) filed October 15, 2009 be and hereby is **SUSTAINE**D as to plaintiff's claims against Dr. Hoang under Section 1983.

**IT IS FURTHER ORDERED** that the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims against Secretary Werholtz, Warden McKune, Dr. Hoang, William Shipman, Robert Arnold and Lt. Sharon Blakenship.  Plaintiff's state law claims for negligence are hereby **DISMISSED** without prejudice.

Dated this 21st day of January, 2010, at Kansas City, Kansas.

> s/ Kathryn H. Vratil
> Kathryn H. Vratil
> United States District Judge